UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| QUANG LE PHAN,<br><br>                              Petitioner,<br><br>v.<br><br>CHRISTOPHER LAROSE, Senior Warden, Otay Mesa Detention Center, et al.,<br><br>                              Respondents. | Case No.: 26-cv-1386-JES-MSB<br><br>**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Before the Court is Petitioner Quang Le Phan's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition"), filed on March 4, 2026. ECF No. 1 ("Pet."). Pursuant to the Court's order to show cause, Respondents filed a return to the petition. ECF No. 4 ("Return"). Petitioner filed an optional Traverse. ECF No. 5 ("Traverse"). For the reasons set forth below, the Court **GRANTS** the petition.

I.     BACKGROUND

Petitioner, a citizen of Vietnam, entered the United States in 1993 as a refugee. Pet. ¶ 19. He was granted lawful permanent resident status in 1994. *Id.* ¶ 20. In 2003, Petitioner was convicted of possession of counterfeit securities of an organization under 18 U.S.C. § 513(a). *Id.* ¶ 21. Respondents then placed Petitioner in removal proceedings. *Id.* ¶ 22.

1   On June 14, 2004, an Immigration Judge ("IJ") ordered Petitioner removed from the United States. *Id.* Respondents were not able to effectuate Petitioner's removal under Vietnam's then-existing policy of not accepting removals of individuals who left Vietnam before 1995. *Id.* ¶ 23. Respondents thus granted Petitioner release under an Order of Supervision (Form I-220B). *Id.* Petitioner has worked under government authorization since his release, and is now married to a U.S. citizen and has U.S. citizen children. *Id.* ¶¶ 2, 24, 28.

On March 25, 2025, Respondents re-detained Petitioner at a routine supervision check-in. *Id.* ¶ 25. Petitioner states that he had lived for twenty years in the country without incident since his prior release, that he had complied with all conditions of his release, and that the basis for his re-detention was the 2003 conviction. *Id.* ¶ 44.

Petitioner filed a motion to reopen his removal proceedings after re-detention, seeking immigration relief. *Id.* ¶ 27. An IJ granted re-opening of proceedings, rendering the prior order of removal non-final. *Id.* In granting re-opening, the IJ recognized Petitioner's significant equities in his twenty years in this country, his family relationships, and the fact that he has no additional criminal history since the 2003 conviction. *Id.* ¶ 28. Petitioner subsequently sought a custody redetermination hearing, which an IJ denied on the basis of jurisdiction. *Id.* ¶ 29. Petitioner is currently seeking adjustment of status based on a Form I-130 filed by his spouse, and waiver of admissibility. *Id.* ¶ 30. Petitioner is scheduled to appear before an IJ for a master calendar hearing on April 29, 2026. Return at 3.

Petitioner has been detained at Otay Mesa Detention Center for the period of eleven and a half months since his re-detention. Pet. ¶ 25.

## II.   LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal

1  custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of
2  habeas corpus to a petitioner who demonstrates to be in custody in violation of the
3  Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas
4  corpus has served as a means of reviewing the legality of Executive detention, and it is in
5  that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301
6  (2001). Accordingly, challenges to immigration-related detention are within the purview
7  of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see
8  also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.   DISCUSSION

In his petition, Petitioner argues that his detention violates the Due Process Clause of the Fifth Amendment because Respondents revoked his release on supervision on the basis of his 2003 conviction, which predated his release, without providing any process regarding his re-detention. Pet. ¶ 44. In their return, Respondents respond that Petitioner's claims are jurisdictionally barred and that he is mandatorily detained under 8 U.S.C. § 1226(c) due to his 2003 conviction. *See generally*, Return. For the reasons set forth below, the Court finds that Petitioner's Due Process rights were violated when Respondents improperly revoked his release without providing him with constitutionally adequate notice and opportunity to be heard.

#### A.   Jurisdiction

The arguments with regards to jurisdiction are the same as those addressed by the undersigned in *Martinez Lopez v. Noem et al.*, No: 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). The Court adopts it reasoning as to these issues and incorporates it by reference. *See also Beltran et al. v. Noem et al.*, No. 25CV2650-LL-DEB, 2025 WL 3078837, at *3-4 (S.D. Cal. Nov. 4, 2025) (holding same).

Accordingly, the Court finds that the jurisdiction stripping provisions of 8 U.S.C. § 1252 do not strip it of jurisdiction to hear Petitioner's claims and the claims can be brought upon a petition for a writ of habeas corpus.

//

### B. Due Process

"The Due Process Clause of the Fifth Amendment prohibits the Government from depriving individuals of their life, liberty, or property, without due process of law." *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all persons within the United States, including aliens, whether their presence is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 679. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. A person at risk of suffering a serious loss being given notice and an opportunity to be heard, in a meaningful manner and at a meaningful time, is the essence of procedural due process. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Courts have identified various ways that a petitioner may be granted some form of release. The choice is "discretionary and is made on a case-by-case basis." *J.S.H.M v. Wofford*, No. 1:25-CV-01309 JLT SKO, 2025 WL 2938808, at *6 (E.D. Cal. Oct. 16, 2025). Parole can be made for humanitarian reasons or for it providing a significant public benefit under 8 U.S.C. § 1182(d)(5)(A), or it can be for conditional parole under 8 U.S.C. § 1226(a). *Id.* Courts have recognized that typically, the term "released on their own recognizance" refers to conditional parole. *Id.*; *see also Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007) ("It is apparent that the INS used the phrase 'released on recognizance' as another name for 'conditional parole' under § 1226(a)"); *Castellon*, 2025 WL 2373425, at *4; *Faizyan v. Casey*, No. 3:25-CV-0884-RBM-JLB, 2025 WL 3208844, at *1 n.2 (S.D. Cal. Nov. 17, 2025).

While courts have recognized these as distinct procedures, they have consistently applied the same procedural due process analysis to petitioners under these forms of parole. In the context of 8 U.S.C. § 1182(d)(5)(A), courts have held that such parole status entitles the petitioner to certain due process rights under both procedural due process and the Administrative Procedure Act ("APA"). *See Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1146 (D. Or. 2025) (finding violation under APA); *Mata Velasquez v. Kurzdorfer*, 794 F.

Supp. 3d 128, 154 (W.D.N.Y. 2025) (finding violation under procedural due process). Similarly, for conditional release under § 1226(a), the court in *Pinchi* explained similar procedural due process rights:

> [Petitioner's] release from ICE custody after her initial apprehension reflected a determination by the government that she was neither a flight risk nor a danger to the community, and [Petitioner] has a strong interest in remaining at liberty unless she no longer meets those criteria. The regulations authorizing ICE to release a noncitizen from custody require that the noncitizen "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons" and that the noncitizen is "likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). "Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). [Petitioner] was apprehended by ICE officers when she crossed the border into the United States . . . ICE then released her on her own recognizance. As ICE was not authorized to release [Petitioner] if she was a danger to the community or a flight risk, the Court must infer from [the] release that ICE determined she was neither. [Petitioner's] release from ICE custody constituted an "implied promise" that her liberty would not be revoked unless she "failed to live up to the conditions of her release." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). The regulatory framework makes clear that those conditions were that she remain neither a danger to the community nor a flight risk. . . . Accordingly, [Petitioner's] private interest in retaining her liberty is significant.

*Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1034-35 (N.D. Cal. 2025). Several district courts have followed suit and found due process violations where the petitioners in the cases were specifically identified to be released under Order of Release on Recognizance with an accompanying I-220 form. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025) (finding due process violation where petitioner was originally released on OREC); *Leiva Flores*, 2025 WL 3228306, at *5 (similarly finding procedural due process violation for petitioner released on OREC and requiring hearing before detention); *Faizyan*, 2025 WL 3208844, at *7 (same).

    The Court agrees with all the foregoing courts and similarly holds that Respondents created a liberty interest in Petitioner when they issued his Order of Supervision. *See* Pet. ¶ 2. As this Court explained in *Sanchez v. LaRose*, due process requires not only notice and opportunity to be heard regarding the revocation of such an interest, but also that the notice and opportunity be meaningful. No. 25-CV-2396-JES-MMP, 2025 WL 2770629 at *3 (S.D. Cal. Sept. 26, 2025). Here, Petitioner argues that he was subjected to re-detention on the basis of his 2003 conviction, which predates his order of supervised release, and was not given the opportunity to be heard regarding his re-detention. *Id.* ¶¶ 3, 44. In their briefing, Respondents provide no evidence that Petitioner was afforded any notice or opportunity to be heard regarding the revocation of his supervised release. *See generally* ECF No. 4.

    Further, without changed circumstances or another factor justifying re-detention, any notice and opportunity to be heard that did occur could not have been meaningful. *See Rios v. Noem*, No. 25-CV-2866-JES-VET, 2025 WL 3141207, at *2 (S.D. Cal. Nov. 10, 2025) ("An alien's opportunity to be heard regarding a change in his status is only meaningful if the government comports with its own internal standards regarding parole revocation. DHS has the authority to revoke an alien's supervised release 'at any time' on a discretionary, but not unlimited, basis."). Respondents focus their return on Petitioner's 2003 conviction, which cannot constitute a changed circumstance justifying revocation because it predated Petitioner's order of supervision. *See* Return at 4. Accordingly, the Court finds that Respondents violated Petitioner's due process rights when they re-detained her on March 25, 2025.

## IV.  CONCLUSION

    For the reasons discussed above, the Court **GRANTS** Petitioner's writ of habeas corpus, and does not reach the remainder of Petitioner's claims as the requested relief is granted. Because the Court grants the petition on the Due Process ground and concludes that Respondents' revocation of Petitioner's supervised release violates procedural due process, Respondents are **ORDERED** to <u>immediately</u> release Petitioner from custody,

1  subject to any conditions of his preexisting release that existed at the time he was re-
2  detained. The Parties are **ORDERED** to file a Joint Status Report by **March 16, 2026**,
3  confirming that Petitioner has been released.

4  **IT IS SO ORDERED.**

5  Dated: March 12, 2026

*[signature]*

Honorable James E. Simmons Jr.
United States District Judge